UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SAMTECH LLC *d/b/a* MASSIF,

                *Plaintiff*,

– against –

BROOKLYN ARMED FORCES, LLC; BROOKLYN A F INC.; CALIFORNIA SURPLUS INC.; JOHN PANOUSOPOULOS; RAMIN KOHANBASH; & SPORTSMAN'S GUIDE LLC, *f/k/a* THE SPORTSMAN'S GUIDE, INC.,

                *Defendants*.

**MEMORANDUM & ORDER**
23-cv-01185 (NCM) (RML)

---

**NATASHA C. MERLE**, United States District Judge:

    Plaintiff Samtech LLC d/b/a Massif ("Samtech") commenced this action against defendants Brooklyn Armed Forces LLC, Brooklyn A F Inc., California Surplus Inc., John Panousopoulos, Ramin Kohanbash, and the Sportsman's Guide LLC f/k/a The Sportsman's Guide ("Sportsman's Guide"). *See* Third Amended Compl. ("TAC"), ECF No. 46.[1] As against all defendants other than defendant Sportsman's Guide, plaintiff alleges, among other things, infringement of its U.S. Design Patent No. D641,137 ("'641 Patent") for the ornamental design of a military style jacket. TAC ¶¶ 69–79.

---

[1]     Defendants Brooklyn Armed Forces, LLC, Sportsman's Guide LLC, and John Panousopoulos have appeared in this action, as well as pro se defendant Ramin Kohanbash. *See* ECF Nos. 9, 54, 57. Defendants Brooklyn A F Inc., California Surplus Inc. have not filed notices of appearance. Additionally, Brooklyn A F Inc., California Surplus Inc., and Kohanbash have not answered the third amended complaint.

1

The parties dispute the claim construction of the '641 Patent. Pursuant to the parties' claim construction briefs, and for the reasons discussed below, the Court construes the '641 Patent as follows:

> The '641 Patent claims the ornamental design for a military jacket, as shown and described in FIGS. 1-16 and accompanying written description of the '641 Patent. The broken lines consisting of long dashes shown on the surface of the jacket in FIGS. 1-16 represent stitching. The broken lines consisting of short dashes showing portions of the human form in FIGS. 8 and 16 form no part of the claim. Surface lines shown on the surface of the jacket in FIGS. 1-16 represent surface shading, not surface ornamentation.

## BACKGROUND

Plaintiff manufactures and sells high performance apparel to consumers including the United States military. TAC ¶ 18. Plaintiff is the owner of the '641 Patent, a design patent that claims the non-functional ornamental design for a military style jacket as depicted in the patent illustrations. *See* TAC ¶ 19. Plaintiff alleges that defendants, other than Sportsman's Guide, have made, used, sold, and offered to sell jackets that misappropriate the design for the military style jacket claimed by the '641 Patent ("Accused Jackets"). TAC ¶¶ 22, 24. Plaintiff claims that, to an ordinary observer, the non-functional ornamental design of the Accused Jackets and the design claimed by the '641 Patent are substantially the same, and this similarity has deceived consumers and induced them to purchase the Accused Jackets. TAC ¶ 26.

On January 29, 2025, defendants Sportsman's Guide, Brooklyn Armed Forces, LLC, and Panousopoulos filed motions requesting a pre-motion conference in anticipation of motions to dismiss and for summary judgment. *See* ECF Nos. 90, 91. Plaintiff opposed. *See* ECF Nos. 94, 95. On April 2, 2025, the Court held a conference on defendants' anticipated motions. *See* ECF Minute Entry dated April 2, 2025. Following

2

that conference, the Court declined to set a briefing schedule on defendants' dispositive motions and instead instructed the parties to propose a schedule for claim construction briefing. The parties filed their joint claim terms chart on April 28, 2025. *See* ECF No. 113-1 ("Claims Chart"). The parties thereafter filed memoranda in support of their proposed constructions. *See* Plaintiff's Opening Claim Construction Brief ("Pl. Br."), ECF No. 116-1; Defendants' Memorandum of Law in Support of Proposed Claim Construction ("Defs. Br."), ECF No. 117; Plaintiff's Reply Claim Construction Brief ("Pl. Reply"), ECF No. 118.

Plaintiff proposed the following construction for the '641 Patent:

> The '641 Patent claims the ornamental design for a military jacket, as shown and described in FIGS. 1-16 and accompanying written description of the '641 Patent. The broken lines consisting of long dashes shown on the surface of the jacket in FIGS. 1-16 represent stitching and are part of the claim. The broken lines consisting of short dashes showing portions of the human form in FIGS. 8 and 16 form no part of the claim. Surface lines shown on the surface of the jacket in FIGS. 1-16 represent surface shading, not surface ornamentation.

Claims Chart 2.[2]

Defendants proposed the following description of the '641 Patent:

> An article of clothing having the features of a military jacket with the sole surface ornamentation illustrating the stitching patterns connecting fabric pieces functioning to provide a form-fitting jacket to serve as an outer layer with a low-profile ergonomic fit adapted to fit easily over uniforms and resist bunching under packs or body armor, and includes functional features of zippered shoulder pockets to provide easy access to gear, flapped pen pockets of conventional design to accommodate aviators, and a pass through flap on the upper shoulder area for CVC extraction straps. The surface ornamentation of the stitching pattterns contrast with the background material of the jacket. The conventional flapped

---

[2] Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

>pen pockets are located on the free end portions of the sleeves of the jacket. As shown in Figs. 2, 4, 5, 10, 12, and 13, the conventional flapped pen pocket on the right sleeve of the jacket is located more towards the front of the sleeve and the conventional flapped pen pocket on the left sleeve of the jacket is located more towards the side of the sleeve. This is particularly noticable in Figs. 4 and 5 and Figs. 12 and 13. In Figs. 2 and 10 the fabric yoke covering the shoulders is connected to the respective sleeves by fabric pieces of noticeably differing shapes.

Claims Chart 2.

For the reasons discussed below, the Court adopts plaintiff's proposed construction of the '641 Patent with one correction.

## DISCUSSION

A design patent "protects a new, original and ornamental design for an article of manufacture." *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1291 (Fed. Cir. 2024) (quoting 35 U.S.C. § 171(a)).[3] Such patents enjoy a "presumption of validity." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015). Determining infringement of a design patent is a two-step process: First, the court must construe the design patent's claim. *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 253 (E.D.N.Y. 2015). Next, the factfinders must compare the patented and accused designs to determine whether the accused design is substantially similar in appearance to the patented design. *Id.* At issue here is the first step of the claim construction process, which must be resolved by the Court before turning to infringement: the Court must construe the scope of the design patent's claim.

"Design patents are given narrow scope," *Top Brand LLC v. Cozy Comfort Co.*, 143 F.4th 1349, 1358 (Fed. Cir. 2025), and "only protect the original, nonfunctional aspects of

---

[3] Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

an ornamental design as shown in the patent." *N. Star Tech. Int'l Ltd. v. Latham Pool Prods., Inc.*, No. 2023-2138, 2025 WL 1189919, at *2 (Fed. Cir. Apr. 24, 2025). Design patents are typically claimed as shown in drawings, and because a design is "better represented by an illustration than it could be by any description," the Federal Circuit in *Egyptian Goddess, Inc. v. Swisa, Inc.*, instructed that "the preferable course ordinarily will be for a district court not to attempt to construe a design patent claim by providing a detailed verbal description of the claimed design." 543 F.3d 665, 679 (Fed. Cir. 2008). District courts may therefore construe design patents by reference to the illustrations in the patents. *See id.*

Nevertheless, because design patents only protect the elements of a design that are ornamental, rather than functional, courts may verbally construe a design patent claim where it may "help[] the fact finder distinguish between those features of the claimed design that are ornamental and those that are purely functional." *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016). Thus, where a design patent "contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11-cv-07211, 2012 WL 3031150, at *4 (S.D.N.Y. July 25, 2012).

### A. Whether a Detailed Verbal Description of the Claimed Design is Necessary

Defendants argue that, notwithstanding the guidance of *Egyptian Goddess*, a detailed verbal description of the '641 Patent is necessary to distinguish the functional aspects of the claimed design, which are not protected by the patent, from the ornamental aspects of the claimed design, which are protected by the patent. Defs. Br. 2–3. Defendants also argue that it is necessary to clarify that the "only ornamental feature

5

illustrated in the patent concerning [the] stitching pattern" of the jackets is "the highly visible contrast between the stitching material and background fabric." Defs. Br. 4–5. Defendants' arguments in favor of a detailed verbal description of the claimed design are unavailing.

### i. Functional Elements of the Design

First, defendants argue that the majority of the elements of the design patent as illustrated are functional, rather than ornamental, and thus must be identified and excluded from the protections of the patent. Defs. Br. 3. Defendants argue that the functional features of the patent design include the pockets of the jacket and the shape of the fabric pieces, which contribute to the jacket's ergonomic fit. Defs. Br. 3. In response, plaintiff contends that "the alleged functional features of the claimed design are not purely functional," and that aspects of those functional features are ornamental, including their "specific relative positions and orientations as well as their shapes, layouts, and contours, that attributes to the overall design." Pl. Reply 8.

As discussed above, design patents protect the "appearance of an article of manufacture." *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006). A design patent "limits protection to the ornamental design of the article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). Thus, while "[a]rticles of manufacture necessarily serve a utilitarian purpose," design patents are directed only "to ornamental designs of such articles." *Ethicon*, 796 F.3d at 1328.

An element of a design is functional, and not protected by the design patent, when "the appearance of the claimed design is dictated by the use or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). Thus, "when there are several ways to achieve the function of an article of manufacture, the design of

6

the article is more likely to serve a primarily ornamental as opposed to functional purpose." *Hutzler*, 2012 WL 3031150, at *3. The Federal Circuit has provided several factors which may be useful in determining whether elements of a claimed design are functional: "[1] whether the protected design represents the best design; [2] whether alternative designs would adversely affect the utility of the specified article; [3] whether there are any concomitant utility patents; [4] whether the advertising touts particular features of the design as having specific utility; and [5] whether there are any elements in the design or an overall appearance clearly not dictated by function." *Sport Dimension*, 820 F.3d at 1322; *see also id.* ("Although we introduced these factors to assist courts in determining whether a claimed design was dictated by function and thus invalid, they may serve as a useful guide for claim construction functionality as well.").

Defendants argue that the following features are functional and must be excluded from the protection of the patent: "zippered shoulder pockets, flapped pen pockets, . . . ergonomic fit," and the "shape of the fabric pieces." Defs. Br. 3–4. To support this contention, defendants present argument only as to the fourth factor provided by the Federal Circuit—the advertising of plaintiff's military style jacket covered by its '641 Patent. Specifically, defendants point to Exhibit B of plaintiff's Third Amended Complaint, which shows plaintiff's jacket for sale online. Defs. Br. 3. In the details section of that website, the jacket is described as having "[f]unctional features such as zippered shoulder pockets" which "provide easy access to gear, flapped pen pockets [to] accommodate aviators, and a pass-through flap [that] allows for CVC extraction straps." *See* TAC Ex. B at 2–3, ECF No. 19-2. This section also states that the jacket "[f]its easily over uniforms and won't bunch under packs or body armor." TAC Ex. B at 2–3. While defendants may be correct that the advertising highlights the functionality of certain

7

features of plaintiff's jacket, it does not follow that these elements of the design are *dictated* by their function such that they should be excluded from the scope of the claim. *See Ethicon*, 796 F.3d at 1329 ("[A] claimed design was not invalid as functional simply because the primary features of the design could perform functions.").

Defendants have not identified a utilitarian reason why the features of the design covered by the '641 Patent are limited by their specific use or purpose. For example, defendants have not established that the pockets on the jacket need to be in the shape and placement depicted in the illustrations to serve their function of providing "easy access to gear," or that the shape of the fabric pieces need to be the shape depicted to achieve an ergonomic fit, be worn over uniforms, and to avoid bunching under packs or body armor. *Id.* at 1328–29 ("Because there was no utilitarian reason the mold had to impress the particular claimed rock walkway pattern into the concrete, we determined that the claimed design was primarily ornamental[.]"). Absent such a utilitarian reason, defendants have failed to demonstrate that these elements of the patent are dictated by their function, and the Court concludes that the claimed design as depicted in the patent illustrations is primarily ornamental. *See id.* at 1328 (finding that the party disputing the validity of a patent as functional rather than ornamental bears the burden of proving invalidity by clear and convincing evidence).

Defendants have not identified purely functional elements of the claimed design which would necessitate a detailed verbal description, as opposed to the preferable course of construing the claim to be the overall appearance of a military jacket as depicted in the patent illustrations.

8

### ii. Defendants' Proposed Language Regarding Contrast Between Stitching Material and Background Fabric

Next, defendants argue that the "only ornamental feature illustrated in the patent concerning [the] stitching pattern" of the jackets is "the highly visible contrast between the stitching material and background fabric." Defs. Br. 4–5. In response, plaintiff argues that the contrast between the stitching patterns and the fabric of the material in the patent illustrations is simply a byproduct of the illustration being in black and white, as is normally required for patent applications, and that the claimed design is not limited to a particular color or fabric material. Pl. Reply 8–9. The Court agrees with plaintiff.

As noted by plaintiff, patent drawings are generally required to be in black and white. *See* 37 C.F.R. § 1.84(a)(1). Plaintiff also points out that design patent claims generally "will broadly cover contrasting surfaces unlimited by colors," and are "not [] limited to specific material." *Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 795, 797 (Fed. Cir. 2020) (citing Manual of Patent Examining Procedure ("MPEP") § 1503.02(II)). Defendants do not contest that patent applications typically contain illustrations in black and white, or otherwise give the Court reason to believe that the contrast between the stitching patterns and the fabric requires description. Thus, the Court is unpersuaded that the claim should be construed to instruct the factfinder that the claim protects only stitching patterns which "contrast with the background material of the jacket." Claims Chart 2. Thus, this language is excluded from the construction of the claimed design.

### iii. Plaintiff's Proposed Language Regarding Broken Lines and Shading

Plaintiff's proposed language for construing the claim is a proper use of the claim construction process, as this langauge will guide the fact finder by "describing the role of particular conventions in design patent drafting[.]" *Egyptian Goddess*, 543 F.3d at 680. Plaintiff's proposed construction of the claimed design includes language indicating that

9

the broken lines showing the human form in figures 8 and 16 form no part of the claim, and that the surface lines shown on the surface of the jacket indicate shading.[4] The Court agrees, and includes this language as part of the construction of the claimed design.

The Code of Federal Regulations provides that "[a]ppropriate and adequate surface shading should be used to show the character or contour of the surfaces represented." 37 C.F.R. § 1.152. Additionally, broken lines are generally used to show the "environment in which the article embodying the design is used." *See* MPEP § 1503.02 (III) ("Unclaimed subject matter may be shown in broken lines for the purpose of illustrating the environment in which the article embodying the design is used. Unclaimed subject matter must be described as forming no part of the claimed design or of a specified embodiment thereof."). Accordingly, plaintiff's instructions regarding shading in figures 8 and 16 are appropriate, as are the instructions that the broken lines show the human form wearing the jacket and that those lines form no part of the claim. Thus, plaintiff's language regarding these elements of the claimed design is adopted.

However, while the Court agrees on instructing the factfinders that the human form and the shading are not part of the claim, the Court will not add an instruction highlighting one particular feature of the design patent as being a part of the claim. Thus, the Court omits plaintiff's proposed language that the stitches as depicted in the illustrations "are part of the claim," because the design patent is construed "as shown and described in FIGS. 1-16." Claims Chart 2. Therefore, this description necessarily includes the long dashes on the surface of the jacket. Design patents are "defined by the drawings in the patent, not just by one feature of the claimed design," *see KeyStone Retaining Wall*

---

[4] As part of defendants' own proposed construction, they do not dispute that the long dashes shown on the surface of the jacket represent stitching. *See* Claims Chart 2.

10

*Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993), and thus the factfinder must consider the claimed design "as a whole" to determine whether the "overall visual impression left by the patented and accused designs are substantially similar[,]" *Top Brand LLC*, 143 F.4th at 1358. Accordingly, it will be for the factfinder to determine whether the patterns and shape of the stitching as shown in the illustrations contribute to an overall visual impression that the '641 Patent and the Accused Jackets are substantially similar. Thus, the Court declines to emphasize for the factfinder a particular element of the claimed design.

### B. Whether a Detailed Verbal Description is Necessary to Resolve "Discrepancies" in the Patent Illustrations

Defendants also argue that the patent illustrations contain discrepancies which "need to be part of the claim construction in order to verify and establish for the record what is actually illustrated in the drawing figures of the patent for any validity analysis." Defs. Br. 4. Defendants argue that the following discrepancies necessitate a detailed verbal description: the fact that in some figures of the design patent, the "conventional flapped pen pocket on the right sleeve of the jacket is located more towards the front of the sleeve" while the same type of pocket on the left sleeve is "located more towards the side of the sleeve"; and the fact that "the fabric yoke covering the shoulders is connected to the respective sleeves by fabric pieces of noticeably differing shapes." Defs. Br. 4. Plaintiff, in response, construes defendants' arguments as contending that the design patent should be "void for indefiniteness because of the[] alleged discrepancies." Pl. Reply 10.

The Court does not interpret defendants' arguments regarding the alleged discrepancies as an argument that the patent is void for indefiniteness—instead, defendants seem to contend that a verbal description of those "discrepancies" is necessary

to properly inform the factfinder of the scope of the claim. *See* Defs. Br. 4 ("These discrepancies as illustrated . . . need to be part of the claim construction in order to . . . establish for the record what is actually illustrated in the drawing figures of the patent[.]").[5] The Court disagrees.

The aspects of the design patent which defendants claim are "discrepancies" instead appear to be elements of the illustration which necessitate no verbal description. Defendants do not contend that there are discrepancies between figures that would lead to confusion for the factfinder, or render them unable to determine whether the Accused Jackets are substantially similar to the '641 Patent. Instead, defendants appear to argue that the differences in elements of design between the left sleeve and the right sleeve warrant a verbal description. This is incorrect. As discussed above, the illustration of the claimed design is often "its own best description." *Egyptian Goddess*, 543 F.3d at 679 (quoting MPEP § 1503.01). Defendants have offered no reason why the finders of fact will be unable to evaluate the positions of the pen pockets on the sleeves or the shape of the fabric yoke on each sleeve when determining the similarity between the accused and patented designs.

Moreover, even if defendants attempt to argue that the discrepancies being identified are between different figures in the patent illustrations, these discrepancies are

---

[5] "[I]n order for a design patent to be invalidated for indefiniteness, errors and inconsistencies in the patent drawings must be material and of such magnitude that the overall appearance of the design is unclear." *HR U.S. LLC v. Mizco Int'l, Inc.*, No. 07-cv-02394, 2009 WL 890550, at *6 (E.D.N.Y. Mar. 31, 2009). The party challenging the validity of the patent "bears the burden of proving invalidity" by "clear and convincing evidence." *Times Three Clothier, LLC v. Spanx, Inc.*, No. 13-cv-02157, 2014 WL 1688130, at *6 (S.D.N.Y. Apr. 29, 2014). Here, defendants have presented no argument that that overall appearance of the claimed design is unclear. Instead, defendants argue that the discrepancies identified must be described to establish "what is actually illustrated in the drawing figures[.]" Defs. Br. 4.

not readily apparent upon review of the illustrations referenced by defendants in their brief. Such minimal or unapparent differences do not rise to the level of an inconsistency that would "preclude the overall understanding of the drawing as a whole." *In re Maatita*, 900 F.3d 1369, 1376 (Fed. Cir. 2018) (discussing the standard for rejecting a patent application as non-enabled and indefinite under 35 U.S.C. § 112). Thus, the factfinders will not be impeded in assessing the infringement of the design patent, if any, by the alleged discrepancies.

Thus, defendants' detailed verbal description of the location and size of certain pockets on the jacket is not necessary. *See Egyptian Goddess*, 543 F.3d at 679 ("[T]he court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful."). Defendants have failed to show that these elements of the design are so unclear in the illustrations that a detailed verbal description is necessary to properly inform the finder of fact of the scope of the claim.

## CONCLUSION

The Court hereby construes the '641 Patent as decribed herein.

**SO ORDERED.**

 /s/ Natasha C. Merle
NATASHA C. MERLE
United States District Judge

Dated: October 20, 2025
Brooklyn, New York

13